JUSTICE GRAY,
dissenting.
I dissent from the opinion of the majority. I would at very least reverse and remand for entry of the legal basis for the privacy ruling and for a new in camera review and entry of findings sufficient to permit review by this Court. For reasons that are completely beyond my understanding, this Court has decided to permit a right of privacy improperly asserted by the Roman Catholic Church to override all State interest in criminal investigation and prosecution. The consequences will be vast and incalculably damaging to law enforcement and prosecution efforts in Montana and to victims of criminal sex offenses.
The majority’s statement of the facts is conveniently abbreviated; as a result, the total picture of the events which occurred in two judicial districts is not clear. For that reason, I restate at some length the facts of record which underlie the issues before this Court.
The State of Montana charged defendant and respondent George Burns (Burns) with Deviate Sexual Conduct and Deviate Sexual Conduct Without Consent in Beaverhead County Cause No. DC-91-2378. After Burns pled not guilty and furnished a list of character witnesses to the prosecution, the prosecution applied for an investigative subpoena duces tecum in the First Judicial District Court, asserting that the administration of justice required the issuance of the subpoena requiring the Catholic Diocese of Helena to produce its employee files on Bruns. The application was supported by an affidavit enumerating in detail the bases for the application.
The Honorable Dorothy McCarter issued the subpoena on September 23, 1991. In it, she found “that the administration of justice requires” the issuance of the subpoena; the subpoena went on to command the Chancellor of the Diocese to produce immediately all records of “employee files, employee records, disciplinary proceedings, [and] transfer records” regarding Bums. The secrecy and dis *44 closure provisions relating to grand jury proceedings specifically were made applicable to the subpoena. Failure to comply with the subpoena “is punishable for contempt of court.”
The Diocese orally moved Judge McCarter to quash the subpoena, arguing church canons pertaining to confidentiality of the documents sought. After discussion with the court, counsel for the Diocese agreed that the subpoena, pursuant to an active criminal investigation and attendant compelling state interest, would reach the documents held by the Diocese. Counsel also agreed that the files would be reviewed in camera by the trial court. The First Judicial District Court denied the motion to quash the subpoena on September 27, 1991, and ordered the in camera review by the presiding trial judge, the Honorable Tom Olson. (The Honorable Frank Davis had recused himself from the case.)
Between the time of Judge McCarter’s order of September 23 issuing the subpoena and her subsequent order of September 27 denying the Diocese’s motion to quash, the Diocese produced the files in Judge Olson’s court on September 25. Notwithstanding its agreement in the First Judicial District that the subpoena would reach the files because of the State’s compelling interest, the Diocese asserted privacy rights regarding the records. The prosecution was not present. Judge Olson stated in advance that he would review the files “in a summary fashion.” He set September 27 “for the County Attorney to present whatever argument and documents he may have concerning the personnel records.”
Judge Olson reviewed the personnel file in the presence of the Chancellor of the Diocese. He stated on the record that the document was about one and one-half inches thick and that it was “marked confidential, to be opened by the Bishop of the Diocese only.” He noted that it was clear that the State was seeking “other acts” evidence in the file. He opened the file “with reluctance” and reviewed it “in a summary fashion.” He stated at that time that he considered the documents to be “highly personal documents, private documents of the Diocese.” He went on to state that he would accord the State the September 27 hearing if the State pursued it. He pronounced his “impression” that the documents “will not be disclosed ... But I guess I should not pre-judge that until the hearing has taken place. For appearances of fairness ...” he went on to require the Chancellor’s presence, with the documents, at the September 27 hearing.
The September 27 hearing took place as scheduled for the pin-pose of the State’s motion “for release of the investigative subpoena infor *45 mation.” The State recounted for the court the proceedings before Judge McCarter and asserted its compelling interest in obtaining the information. Judge Olson ruled that the evidence sought was to be returned to the Diocese intact, without disclosure. He did so on the grounds that “the Diocese has compelling rights of privacy to its personnel files,” but without providing any legal authority. He restated his original reluctance in reviewing the file and the fact of his summary review. He also noted the “separation of church and state in this country,” a position not argued. He specifically found “that the State cannot show a compelling interest to crack open private church documents.”
The State successfully moved for a stay of further proceedings and appealed Judge Olson’s ruling to this Court.
The majority states the issue as whether the District Court abused its discretion in refusing to grant the State’s motion to discover the Catholic Church’s personnel records concerning a defendant in a criminal case after the District Court conducted an in camera review. The majority’s refusal to even mention the fact that the First Judicial District Court, on the basis of compelling State interest, had already ordered the Diocese to immediately make the records available and denied the Diocese’s motion to quash is an early warning signal of the almost offhand manner in which the majority approaches this case. It is my view that Judge Olson had no authority to totally and completely override Judge McCarter’s finding of compelling State interest and, indeed, to conclude that the State “cannot” show a compelling State interest under the facts of this case; in addition, the court’s failure to enter detailed findings or any legal authority whatsoever essentially renders review by this Court impossible. The majority’s willingness to put its imprimatur on the events and proceedings which occurred in this case is incomprehensible to me.
The majority begins its analysis with the in camera issue and addresses the privacy issue thereafter. For ease of discussion, I will follow suit. To begin, I do not disagree with the majority’s statements concerning the purpose and value of in camera reviews. The cases on which it relies to affirm the actual in camera proceedings which occurred in this case, however, are inapposite. If anything, those cases support a remand for further and appropriate proceedings by the district court.
The majority relies primarily, and erroneously, on State v. Mix and In re Lacy to support its affirmance of the in camera proceedings which occurred in the instant case. In Mix, the trial court reviewed a *46 homicide victim’s medical records in camera after the defendant requested admissibility of the records to show the victim’s unstable personality and violent and turbulent character. Ruling that the records would be excluded, the court “carefully detailed its findings [of remoteness and irrelevance] with counsel;” it later included those “clearly detailed” findings of remoteness and irrelevance in its order denying a new trial. This Court found no manifest abuse of discretion. Thus, while Mix can be said to involve in camera proceedings, it certainly provides no basis for the majority’s affirmance in this case. Mix supports the necessity of a trial court making detailed findings of its reasons for excluding material after an in camera review. In this case, no findings of any kind were made. Absent such findings, and with the file at issue not available to us, there is absolutely nothing for this Court to review. Yet the majority blithely ignores the specifics of Mix, concluding that the District Court properly utilized the in camera procedure and that there was no abuse of discretion.
Lacy also provides no support for the majority’s conclusions. The majority correctly states that in Lacy we determined that the in camera procedure should be used to decide what information properly could be discovered. Again, however, the majority does not focus on the specifics in Lacy and ignores its own analysis therein. The issue in Lacy was an insurer’s right to obtain police department investigation records which the insurer believed would aid it in determining whether a decedent made misrepresentations in his policy application. The insurer filed an application for production; the police department objected to a general release of the information and requested an in camera review to decide which evidence should be released. The district court denied the application altogether on the basis that the carrier was not entitled to the information under the Criminal Justice Information Act; the carrier appealed. We concluded that the insurer had met its burden of showing eligibility to receive confidential police information under the Right to Know provision of the Montana Constitution, subject only to the privacy rights of those named in the records. We remanded for an in camera review by the district court to determine what material could be released, noting that the insurer “should be accorded the widest breadth of information possible.”
Analyzing the facts, procedure and law set forth in Lacy, it is clear that in this case the State met its initial burden of showing entitlement to the file at issue in its application for the subpoena; Judge McCarter so ruled in issuing the subpoena commanding production. The appropriate procedure thereafter would have been an in camera *47 review to determine the extent to which the information should be released. Here, the Diocese had made a motion to quash on confidentiality grounds and subsequently agreed that the State’s overriding interest controlled. Judge McCarter denied the motion to quash. As a result, all confidentiality bases for nondisclosure should have been rejected by Judge Olson. The file should have been disclosed to the State subject only to relevance determinations and to the grand jury secrecy and disclosure provisions previously made applicable by Judge McCarter.
In the event that it was in any way appropriate for the District Court to consider the privacy right asserted, it should have done so mindful of the State’s entitlement to “the widest breadth of information possible,” according to Lacy. In ruling on the privacy right, it should have done a legal analysis delineating the extent to which the right existed under these circumstances. Next, under Lacy, it should have balanced the competing interests, disclosing as much information as possible to the State. Finally, it should have made detailed findings, as required by Mix, so that this Court would have something to review.
Instead, the District Court obviously was extremely reluctant even to open the file. Why? Because it was marked “confidential” and “private.” The total irrelevance of such designations to a legal analysis of an asserted right to privacy can hardly be overstated. Barely overcoming its reluctance, the District Court reviewed the file “in summary fashion” and concluded, without any legal analysis whatsoever, that the file was a private, personal document of the Diocese. And all of this not only outside the presence of the prosecutor, but before he had had a chance to be heard. This is the in camera procedure the majority concludes was properly utilized in this case.
Finally, I am dismayed at the majority’s analysis of the privacy issue itself. The majority glosses over the fact that in this case it is the Diocese which is held to have the right of privacy. It states that the two-prong privacy test was met during the proceedings before Judge Olson and that that test bars discovery of the records at issue here, relying on Missoulian v. Board of Regents. It is a sad day for the state of the law in Montana when this Court cannot distinguish between a case in which the competing interests are the public’s right to know and an individual’s expectation of privacy in personnel evaluations, and one in which the interests are the State’s compelling interest in investigation and prosecutions of criminal sex offenses and the Helena Diocese’s interest in keeping its files safe from scrutiny.
*48 The majority concludes its discussion of the privacy issue by suggesting that its actions and those of the District Court in this case should not be interpreted as blanket unavailability of personnel records. Given the state of the record before us, this statement is disingenuous at best. Perhaps the majority means to limit application of this case to other cases involving the Catholic Church and apply the law properly to all other employers. If so, an insupportable thing has happened in Montana: the Catholic Church has been placed both above and outside the reach of the law with regard to the investigation and prosecution of the very criminal offenses which people of values and morality find so disturbing. If not, the majority provides no analysis of how it plans to distinguish this case from one involving any other employer.
Yet, in this final section, the majority comes closest to admitting what the law requires it to do in this case. The majority discusses Montana Human Rights Division v. Billings and Great Falls Tribune v. Cascade County Sheriff with approval, suggesting that in other cases, presumably cases not involving the Church, it will apply those precedents. In Billings, access to employment records was granted to the Human Rights Division to investigate possible violations of anti-discrimination laws; protective measures were mandated to prevent dissemination of the discovered information. Those results were appropriate in Billings and they are appropriate here. Apparently the majority believes it is more important and, somehow, more legally permissible to discover violations of anti-discrimination laws than to discover and prosecute criminal acts of deviate sexual conduct. I am unwilling to subscribe to such an ordering of priorities. Billings makes it even more clear to me that the State’s interest in this case must override any right to privacy asserted by an entity — whether that entity is the City of Billings, XYZ Corporation or the Helena Diocese. Adequate protective measures are available in this case as they were in Billings; indeed, here Judge McCarter included protective measures in the subpoena when it was issued.
In Great Falls Tribune, the public’s right to know which officers had been disciplined for unlawful acts was held to override the limited privacy interest of those officers. I can conceive of no explanation, nor is one offered, for the majority’s conclusion in this case that the State’s interest in prosecuting sex offense cases and, indeed, in protecting Montanans irom perpetrators of such offenses, must give way to the privacy interests of the Helena Diocese of the Roman Catholic Church.
*49 In its final paragraph, the majority performs its last reconstruction of the record in this case to match the result it is determined to reach. Contrary to the majority’s statement, the District Court did not order the in camera review as a result of ££consider[ing] the possible effects of releasing the Catholic Diocese’s personnel records concerning Burns ....” Judge McCarter ordered the Church to immediately produce the files after finding that the State had a compelling interest, denied the Church’s motion to quash, and ordered an in camera review. The record does not suggest why the in camera review was ordered and the majority’s statement constitutes creative speculation. If we are to base our opinions on speculation, I submit that it is more likely that the review was ordered so that irrelevant and/or remote information could be withheld, based on specific findings as required by Mix.
The majority’s next statement, that the District Court heard arguments after the review and determined that disclosure of the information was improper, is true but misleading. The facts that the review was made and a decision announced two days before the prosecution even appeared and was allowed to make argument are conveniently omitted.
Finally, the majority tosses in a non sequitur by mentioning that prohibiting discovery information which is not probative is one of the discretionary functions of trial courts. The record is clear that no review was conducted from a probity perspective and no findings regarding probity were made in this case; indeed, neither this Court nor anyone other than the Church and Judge Olson will ever know whether information probative of the offenses with which Burns is charged is contained in the files.
Law enforcement personnel will be severely hampered by this Court’s action today. More important, at least to me, Montanans will suffer. I dissent.